23 C.C.P.A.(Patents)

## In re FERGUSON.

### Patent Appeals No. 3625.

Court of Customs and Patent Appeals.
June 1, 1936.

McConkey & Smith, of Washington, D. C. (Clinton S. Janes and N. D. Parker, Jr., both of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Claims 1, 3, 5, 6, 11, and 16 of appellant's application for a patent relating to a back-fire release for internal combustion engines were rejected by the Primary Examiner of the United States Patent Office upon the prior art. Upon appeal to the Board of Appeals, the decision of the Examiner was affirmed for reasons which will be hereinafter considered. Appellant has appealed here from the decision of the Board, and we regard claims 3 and 11 of the appealed claims as illustrative. They read:

"3. In combination an internal combustion engine, a starting mechanism there-

for including a starting switch, *manually controllable means for actuating said starting switch, and means responsive to reverse rotation of said engine for preventing the actuation of said starting switch.*

"11. In an automatic starting mechanism for internal combustion engines, manually controllable means for cranking an engine whenever forward rotation thereof ceases including a starting switch *and a control circuit therefor, closure of which causes closure of the starting switch, a pair of contacts in said control circuit and means responsive to reverse rotation of the engine for opening said contacts.*" (Italics ours.)

The application relates to a back-fire release for internal combustion engines, and in appellant's drawing he has disclosed a starting motor for the engine, the engine not being shown. The starting motor is shown to be controlled by a starting switch, which switch may be actuated either manually or through a control circuit. The appealed claims include means responsive to reverse rotation of the engine for preventing the actuation of said starting switch. Appellant has contributed to the art and has been allowed claims for his contribution, and that contribution consists in preventing the starting of the motor by means responsive to positive pressure in the intake system of the engine. For instance, allowed claim 18 provides for a pair of contacts in the control circuit which are so arranged that when positive pressure develops in the intake system, the contacts will be opened, thus preventing the starting of the motor.

The Examiner in rejecting the appealed claims cited three references: Richards, 1174352, March 7, 1916; Gilbert, 1635078, July 5, 1927; Loehr et al., 1773913, August 26, 1930.

The Examiner rejected claims 1 and 3 upon Richards. Of claims 5, 6, 11, and 16, claims 5, 6, and 11 call for a "control circuit," and claim 16 calls for "a source of current supply for automatically cranking the engine whenever forward rotation thereof ceases." As to claims 5, 6, 11, and 16, the Examiner pointed out that the said limitations were old in the prior art cited. Both the references Gilbert and Loehr et al. show that it is old to control a starter switch through a relay. Gilbert's starter is controlled by a relay having a control circuit. The relays of Gilbert and Loehr et al., according to the Examiner, also automatically bring about the cranking of the engine whenever forward rotation ceases.

The Board of Appeals rendered three decisions, having reconsidered its first two decisions, and in the last decision, that of January 16, 1935, the Board stated that it would completely restate its views and that it would "not rely upon either of our previous communications." In view of the contentions of the appellant, we think it is important to quote a major portion of the Board's said decision which is as follows:

"It is appellant's contention that the starting motor of Richards will not be de-energized and remain so until the reverse rotation of the motor has ceased and that the reengagement of the clutch under these conditions causes real damage.

"We are not convinced that the Richards device will necessarily be ineffective in this manner, and if there is difficulty, for the reason stated by appellant, we think that it would be obvious to so arrange the switch that this would be impossible. However, we do not consider that this question is controlling with respect to the patentability of the appealed claims. There can be no question but that Richards intended to devise a means to completely overcome the difficulty which those skilled in the art recognized as existing, namely, to prevent the operation of the starting motor on the engine whenever the engine is running in the reverse direction because of back-fire.

"It is our position that appellant is attempting to cover broadly one of the most obvious ways of overcoming a recognized difficulty. Certainly since those skilled in the art [k]new that the trouble was caused by the reverse rotation of the engine, we believe that one of the first thoughts one would have in attempting to solve the problem would be to provide a means which would be actuated by the reverse rotation of the engine for preventing the energization of the starting motor while this rotation continues.

"We have stated that the Courts frequently have held that the first to provide means for accomplishing a previously conceived or obviously desired improvement is not entitled to all means for this purpose, thereby closing the art to all others who may produce the same result

by means not suggested by the first to provide a means. We referred to a few decisions in our communication of December 11, 1934, designated paper No. 18, but appellant states in effect that he is not aware of any decision which goes so far as to hold that an inventor who has first solved a problem is not entitled to as broad claims as the art will permit covering the structure which he has disclosed. However, in the decision Heidbrink et al. **v.** McKesson, 290 F. 665, 1924 C.D. 407, previously referred to by us, the Cour. ....ted in effect that **a claim for a machine** which is drafted to cover any means which any one may discover of producing the result is invalid. We think this is the accepted law and that appellant's statement **is** untenable.

"The fact that there may be other ways of preventing the damage from back-fire than utilizing the reverse motion of the engine to open and hold open the starting switch, does not, in our opinion, alter the situation where the field that appellant is attempting to cover is an obvious one. For the reasons above stated, our previous decision rejecting the appealed claims as not defining a patentable invention is repeated."

While that portion of the decision above quoted differs in the language used, we think the two grounds of rejection of the appealed claims which the Board applied in its second decision, that of December 11, 1934, are adhered to in its last decision. In said decision of December 11, 1934, it said:

"* * * The decision of the examiner is affirmed in rejecting the claims on the patent to Richards. The claims are also rejected as broader than appellant's invention. * * *"

▆▆ The first ground of rejection is, in effect, that appellant has done nothing inventive over that shown in the patent to Richards. Appellant has argued at length that the Richards structure does not anticipate the invention and points out several objections to the Richards patent which, he urges, are justification for the conclusion that what appellant has done amounts to invention over that which Richards did.

In view of our conclusion that the Board's second ground of rejection—to the effect that the appealed claims are broader than appellant's invention—is sound, it is unnecessary for us to consider the prior art at any great length.

We are in agreement with the Board that to allow those of the appealed claims which are directed broadly to a *means* responsive to reverse rotation of the engine (without stating what means) for preventing the actuation of the starting mechanism, would amount to granting appellant a monopoly on all means of bringing about this result "thereby closing the art to all others who may produce the same result by means not suggested" by appellant. And, as we see it, the fact, if it be a fact, that he was the first to provide any such means does not change the situation.

In this court appellant argues, as he evidently argued before the Board, that he is entitled to broad claims which cover all means, since he is the first to invent any means for bringing about the result. If it were conceded that he be the first to provide a means to accomplish the desired result, we cannot agree with appellant's contentions, and we think that the case of Heidbrink et al. **v.** McKesson (C.C.A.) 290 F. 665, 668, and the cases therein cited, definitely settle this question. In the Heidbrink et al. Case, the court said:

"With this statement of the situation, we come to his two claims of 1,265,910. We are compelled to think that they are invalid because functional. They are apparently most deliberately and skillfully drafted to cover any means which any one ever may discover of producing the result; that is, to accomplish the one thing while avoiding the other. We think they are clearly to be condemned under the rule stated in O'Reilly v. Morse, 15 How. 62, 112, 14 L.Ed. 601, Risdon v. Medart, 158 U.S. 68, 77, 15 S.Ct. 745, 39 L.Ed. 899, and the many familiar cases applying the rule, and that they are not within the principle of the Telephone Cases, 126 U.S. 1, 534, 8 S.Ct. 778, 31 L.Ed. 863. We do not mean to say that a claim which in a very general way calls for means is necessarily functional and bad— quite the contrary (Davis Sewing Mach. Co. v. New Departure Mfg. Co. [C.C.A.6] 217 F. 775, 782, 133 C.C.A. 505); nor would we hastily condemn for this reason, a claim which, by its functional quality, only became equivalent to that valid process claim which the inventor might have obtained through another form of

his application; but a claim to a process which attempted to define the process only by its result, would be no less objectionable than is a corresponding claim to a machine."

As to claims 5, 6, 11, and 16, which contain the uninventive limitations heretofore set out, we think the Examiner was correct in his holding, in effect, which holding the Board affirmed, that appellant there claims nothing patentably distinct from that which was shown in the prior art references. We agree with his conclusion that making use of a control circuit or providing a source of current supply for automatically cranking the engine whenever forward rotation thereof ceases, which expedients were old in the cited prior art, would not, when used in the combination set out in the appealed claims, make a patentable distinction over such prior art. Appellant claims in all the appealed claims more than he has invented, and we agree with the decision of the Board in its ground of rejection in this respect.

For the reasons aforesaid, the decision of the Board of Appeals is affirmed.

Affirmed.